UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DANA DRAKE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:16-cv-01097-SEB-DML |
| ) | |
| DAVID J. SHULKIN Secretary, Department ) | |
| of Veterans Affairs, ) | |
| ) | |
| Defendant. ) | |

# ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on Defendant's Motion for Summary Judgment [Docket No. 31], filed on July 25, 2017, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Dana Drake brings this action against her employer, Defendant David J. Shulkin, Secretary of the United States Department of Veterans Affairs ("the VA"), alleging that the VA discriminated against her and subjected her to a hostile work environment based on her race (African-American), in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), and also failed to accommodate her disability and subjected her to a hostile work environment because of her disability, in violation of the Americans with Disabilities Act ("ADA") and/or the Rehabilitation Act.[1] For the reasons detailed below, we GRANT Defendant's Motion for Summary Judgment.

---

[1] It is well-established that the ADA excludes the United States of America from its definition of a "covered entity." *See* 42 U.S.C. §§ 12111(2), 12111(5)(B)(i); *Shiring v. Runyon*, 90 F.3d 827, 830 (3d Cir. 1996). Because the VA is a federal agency, the ADA does not govern its conduct. Accordingly, to the extent that Ms. Drake is attempting to bring any claims pursuant to the ADA, those claims cannot survive summary judgment. Additionally, by failing to put forth any

1

## Factual Background

**Plaintiff's Car Accident and Work Restrictions**

Ms. Drake began her employment with the VA in 2008 as a nurse serving on the mental health unit and subsequently became a registered nurse ("RN") case manager. Drake Dep. at 39-40, 42-43. In April 2013, Ms. Drake was involved in a work-related car accident. She was away from work for six months while recovering from her injuries. Exh. 2 to Medley Decl. at 3.

In October 2013, Ms. Drake's physician submitted paperwork to the VA which stated that Ms. Drake could return to work on October 21, 2013 subject to the following restrictions: (1) no more than 4 hours of work per day; (2) must work in an isolated environment; (3) must focus on only one task at a time without distraction; and (4) must avoid utilizing a computer. Dkt. 31-2 at 1. The VA identified a part-time, limited duty assignment in the occupational health department[2] that complied with Ms. Drake's restrictions and she returned to work in that capacity on October 21, 2013. Dkt. 31-1; 31-2; 31-6. When she returned to work, despite her change in assignment, Ms. Drake remained categorized as a "Grade 2, Step 5" employee, the same grade she had been

---

developed argument in support of her claim that she was subjected to a hostile work environment on the basis of race, that claim is also dismissed. *See Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (internal quotation marks and citation omitted). Accordingly, we <u>GRANT</u> Defendant's Motion for Summary Judgment as to these claims.

[2] According to Ms. Drake, this assignment involved stuffing envelopes and taking them to the mail room. Drake Dep. at 47.

before the car accident, and continued to receive her previous salary. Dkt. 31-2 at 1. Ms. Drake concedes that this assignment complied with her restrictions. Drake Dep. at 152.

**Plaintiff's Updated Restrictions**

In January 2014, Ms. Drake's neurologist, Dr. Brent Huffman, updated her restrictions to permit her to use a computer at work. Dkt. 31-3 at 1. The remainder of her original restrictions remained in place. On January 16, 2014, Ms. Drake requested a change in her part-time, limited duty assignment as permitted by her updated restrictions. The VA identified a position in the women's health department that met her updated restrictions, and, on January 22, 2014, Ms. Drake was assigned to that position. As before, she retained her categorization as a "Grade 2, Step 5" employee and continued to receive the same salary. *Id.*

Ms. Drake maintains that since January 2014, the VA has reassigned her to a number of other part-time, limited duty positions, including an assignment in psychiatry on July 21, 2014, a medical support position in the radiology/MRI department on June 19, 2015, and an assignment with an unidentified department on June 22, 2016. Dkt. 36-4; Dkt. 36-5; Dkt. 36-6. Ms. Drake currently holds a part-time, limited duty position in the VA's transportation department. Drake Dep. at 45, 57-58. According to Ms. Drake, each of these assignments involves working on a computer and none of the positions comply with her restrictions. *Id.* at 53, 152.

**Plaintiff Is Followed from the VA Facility**

According to Ms. Drake, at some point after she returned to work in October 2013, she believes she was followed as she departed the VA facility and photographs were

3

taken of her. *Id.* at 91-92. Ms. Drake first stated that she had been followed by an unmarked, white van, but in her deposition she testified that she was also followed by an automobile with a VA emblem on it. *Id.* at 93; Dkt. 31-6. Although she is unable to identify either driver, she believes that they were "from the VA" and were "checking up on her." Drake Dep. at 93, 94, 98; Dkt. 31-6 at 5. Ms. Drake does not recall reporting these incidents to anyone at the VA nor did she contact the police. Drake Dep. at 97-98, 99-100.

**Plaintiff's Ergonomic Assessment**

Ms. Drake testified that following her return to work she was in constant pain caused by the chairs and other equipment at her workspace. Drake Dep. at 87. In March 2014, the VA workers' compensation department ordered an ergonomic assessment of Ms. Drake's workspace in order to "identify any and all special ergonomic needs [she] had due to her physical and mental conditions." Dkt. 31-6 at 4. Following the assessment, on May 12, 2014, various ergonomic accessories recommended by the VA workers' compensation department were delivered to Ms. Drake. *Id.* According to Ms. Drake, the ergonomic accessories remained in a box on the floor in her work station requiring her to connect and set them up herself.

She further claims that on May 29, 2014, her ergonomic equipment was removed from her work area and placed on the floor, and that, on several occasions she found her computer, chair, and ergonomic accessories disconnected and lying on the floor. Drake Dep. at 100-101; Dkt. 36-7. Ms. Drake does not know who disconnected her ergonomic accessories and does not recall whether she told any supervisor at the VA about these

4

incidents. Drake Dep. at 103-105. Ms. Drake testified that Nurse Practitioner Tonya Baker[3] told her that the ergonomic accessories were "not going to work" and that she could not keep setting them up, but Ms. Drake does not recall reporting this conversation to any highers up. *Id.* at 105-106.

On October 7, 2014, the Local Reasonable Accommodation Coordinator, Terri Morgan, emailed Ms. Drake to ensure that her ergonomic needs had been satisfied. Morgan Decl. ¶ 5; Exh. 1 to Morgan Decl. Ms. Drake responded on October 8, 2014, stating that she had "kinda lost track" of some of the recommendations. Dkt. 31-7 ¶ 6; Dkt. 31-8. Later that day, Ms. Drake forwarded to Ms. Morgan a list of the ergonomic accessories that had been recommended after the assessment, but stated that some items from the assessment "won't be needed" because she had changed desks since the assessment had been completed. Dkt. 31-7 ¶ 7; Exh. 2 to Morgan Decl. According to Ms. Drake, she does not currently know where her ergonomic accessories are and has not seen them for approximately two years. Drake Dep. at 142-43.

**Plaintiff's Car Is Vandalized**

On August 5, 2014, an unknown individual "keyed" Ms. Drake's car. Ms. Drake believes that the vandalism occurred while her car was parked in a lot used by VA employees, but she did not notice the damage to the vehicle until later that afternoon when she stopped to get gas following her departure from the VA facility and had picked up her child from school. Ms. Drake reported the damage to the VA police department,

---

[3] It is not clear from the record whether Ms. Baker was one of Ms. Drake's supervisors or a co-worker.

5

which opened an investigation. An officer from the VA police department, Robert White, inspected Ms. Drake's vehicle on August 6, 2014. Officer White observed scratches on the rear passenger side of Ms. Drake's vehicle. Officer White testified that the scratches "looked like they formed the words 'You Nice' and a smiley face …." Dkt. 31-11 at 3. However, according to Ms. Drake, there was a smiley face and the words "U Nigg" scratched into her vehicle. Exh. 9 to Drake Dep.

After he inspected the vehicle, Officer White reviewed a surveillance video from the VA parking lot where the vandalism was alleged to have occurred and also spoke to Ms. Morgan and Sam Beers, who was Ms. Drake's supervisor at the time, about the incident. Dkt. 31-11 at 3. On September 3, 2014, Officer White closed the investigation into the vandalism because he was "unable to confirm that the incident occurred on the installation due to the fact that the vehicle was off property when the crime was reported" and there was "no camera coverage [of] or witnesses [to]" the vandalism. *Id.*; Dkt. 31-10 ¶ 7.

**The Instant Litigation**

On September 4, 2014, Ms. Drake filed a formal complaint with the VA, alleging "harassment and discrimination based on disability." Medley Decl. ¶ 5; Exh. 1 to Medley Decl. (Formal Complaint). On February 23, 2016, the VA issued its final agency decision, finding that: (1) there was no evidence that Ms. Drake had been "subjected to unwelcome personal slurs or other denigrating or insulting verbal or physical conduct severe or pervasive enough to create a hostile work environment based on her race or disability (Dkt. 31-6 at 14); and (2) Ms. Drake had never requested a reasonable

6

accommodation from the VA, informed any of her supervisors that she needed additional accommodations or that she was dissatisfied with the worker's compensation process (*id.* at 15). The VA thus concluded that Ms. Drake had "failed to prove she was discriminated against as claimed." *Id.*

On May 5, 2016, Ms. Drake filed this lawsuit alleging claims of race and disability discrimination and hostile work environment based on her race and disability. The VA filed the motion for summary judgment now before us on July 25, 2017, which is fully briefed and ripe for ruling.

## Legal Analysis

### I. Standard of Review

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). We neither weigh the evidence nor evaluate the credibility of witnesses, *id.* at 255, but view the facts and the reasonable inferences flowing from them in the light most favorable to the nonmovant. *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).

### II. Discussion

#### A. Race Discrimination Claim

Ms. Drake contends that the VA's failure to properly investigate her vandalism complaint constituted race discrimination in violation of Title VII, which prohibits employers from discriminating "against any individual … because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). An analysis of this claim invokes the Seventh Circuit's decision in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), which states that regardless of whether the court uses the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) or some other framework to evaluate a plaintiff's employment discrimination claim, "the ultimate legal question 'is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 547 (7th Cir. 2017) (quoting *Ortiz*, 834 F.3d at 765). Under this "simplified" approach, the "[e]vidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Ortiz*, 834 F.3d at 765.

We begin by noting that we are not persuaded that the VA failed to adequately investigate Ms. Drake's vandalism complaint. To the contrary, Officer White inspected her vehicle, reviewed surveillance video, and conducted interviews before determining that there was insufficient evidence from which to conclude that the vandalism occurred at the VA facility. Even if the investigation were lacking in some capacity, however, there is no evidence from which a reasonable jury could conclude that any such deficiency in the investigation occurred based on Ms. Drake's race. Ms. Drake herself

has testified that she does not believe that the VA treated similar complaints from white employees any differently than it did hers nor is there any other evidence that would raise an inference that the VA police failed to investigate based on her race. Without such evidence, Ms. Drake's race discrimination claim cannot survive summary judgment. *See Hobbs v. City of Chi.*, 573 F.3d 454, 464 (7th Cir. 2009) (affirming grant of summary judgment in favor of defendant when there was no evidence beyond "suspicious timing" that the alleged failure to investigate the plaintiff's complaint was in retaliation for her having filed an EEOC discrimination complaint).

Moreover, to prevail on her failure to investigate her vandalism claim, Ms. Drake must prove that she was subjected to an adverse employment decision because of her race. Adverse employment actions include only those actions that cause "a materially adverse change in the terms or conditions of her employment," *Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 885 (7th Cir. 1989), which "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* Because Ms. Drake has entirely failed to identify any material adverse change in her employment that she suffered as a result of the VA's alleged failure to investigate her vandalism complaint, her discrimination claim must be dismissed. *Cf. Jenkins-Allen v. Powell Duffryn Terminals, Inc.*, 18 F. Supp. 2d 885, 891 (N.D. Ill. 1998)

(holding that the defendant's alleged failure to investigate damage to the plaintiff's work vehicle did not rise to the level of an adverse employment action); *Clemmer v. Office of Chief Judge of Circuit Court of Cook Cty. & State of Ill.*, No. 06 C 3361, 2008 WL 5100859, at *15 (N.D. Ill. Dec. 2, 2008) (holding that the defendant's "failure to conduct an inquiry to [the plaintiff's] satisfaction does not constitute an adverse action").

### B. Failure to Accommodate Claim

Ms. Drake next contends that the VA failed to reasonably accommodate her disability, in violation of the Rehabilitation Act. In order to prevail on a "failure to accommodate" claim under the Rehabilitation Act, a plaintiff must set forth evidence establishing that: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability. *E.E.O.C. v. Sears, Roebuck, & Co.*, 417 F.3d 789, 797 (7th Cir. 2005).[4] The parties here focus on the third element of the claim, to wit, whether the VA failed to reasonably accommodate Ms. Drake's cognitive disability. Upon careful review of the evidence, we find that no reasonable fact finder could find in favor of Ms. Drake on this claim.

Ms. Drake contends that, save for the first assignment of stuffing envelopes, all the other positions to which she was assigned did not comport with the restrictions imposed by her physicians. Specifically, Ms. Drake maintains that the VA required her to switch job positions on a number of occasions, to work in areas that were not isolated and had

---

[4] Claims under the Rehabilitation Act are analyzed under the same standards as those applicable to ADA claims. *Ozlowski v. Henderson*, 237 F.3d 837, 839 (7th Cir. 2001).

10

harsh lighting as well as other distractions, and further, required her to use the computer. Ms. Drake also claims that the VA failed to provide her the reasonable accommodation of ergonomic accessories for her workstation. For the following reasons, we disagree with each of these assertions.

First, while it is true that when Ms. Drake initially returned to work in October 2013, she was restricted by her physician from using the computer, it is undisputed that that restriction was complied with. Not until January 2014, when Ms. Drake's physician modified that restriction to indicate that Ms. Drake "may begin using the computer at work" (Dkt. 31-3 at 1), did the VA offer, and Ms. Drake accept, a position that required computer work. Although Ms. Drake now contends that she was restricted to "limited computer usage," there is no indication in the record that there were any specific limits placed on Ms. Drake's ability to use the computer after January 2014. Accordingly, the VA did not fail to accommodate this medical restriction after it had been lifted by Ms. Drake's own physician.

Ms. Drake also argues that the VA failed to accommodate her disability when it required her to switch job positions several times and work in various locations where there was harsh lighting and "multiple distractions." However, she points to nothing in her medical restrictions indicating that she was required to remain in a single job or that she was prohibited from being exposed to certain lighting conditions or that she was

required to be assigned a workspace completely free of distractions.[5] Nor has she presented sufficient evidence indicating that the VA was on notice of such limitations.[6] *See Jackson v. City of Chi.*, 414 F.3d 806, 813 (7th Cir. 2005) ("[T]he language of the ADA itself demonstrates that a reasonable accommodation is connected to what the employer knows about the specific limitations affecting an employee who is a qualified individual with a disability."). Because Ms. Drake has failed to establish that these limitations had been communicated to the VA when she sought the accommodation, the VA was "under no obligation to consider them in the interactive process of determining what a reasonable accommodation would be." *Robert v. Carter*, 819 F. Supp. 2d 832, 847 (S.D. Ind. 2011).

Although Ms. Drake complains about certain of the locations where she says she was required to work, including "hallways, vacant offices, the library and the computer room where the piano is kept," (Pl.'s Resp. at 10), she has failed to identify or explain the manner in which such locations violated her medical restrictions, which required only that she work "in an isolated environment." Dkt. 31-2 at 1; Dkt. 31-3 at 1. Moreover, her deposition testimony reveals that the VA never actually required her to work in such areas; rather, at times when someone was temporarily using her regular workspace[7] or on

---

[5] Ms. Drake's restrictions with regard to "distractions" required only that she be permitted to "focus on one task at a time without distraction," not that her work area be free of any and all distractions. Dkt. 31-3 at 1.

[6] The only evidence put forth by Ms. Drake is that she "told Jennifer that she has to call off for a lot of headaches because the stimulation [was] getting to be more rather than less" (Pl.'s Resp. at 5), but it is not clear who "Jennifer" is or what position she holds at the VA.

[7] Ms. Drake does not take issue with her regular workspace, other than her complaint regarding her ergonomic accessories, which is discussed in more detail below.

occasions when she went "to the restroom and return[ed] and the office was locked to the Occupational Health department," (Drake Dep. at 166-167), she—on her own volition—sought out a vacant office, the computer room, the library, or a hallway in which to work until she could return to her office. Ms. Drake has presented no evidence that she ever reported any of these instances of being unable to use her designated work space to her employer, or that she complained about having to work in these locations or requested to work in a different location. Because Ms. Drake has failed to show that the VA was on notice that the work space it had provided her was insufficient for any of the reasons detailed above, no reasonable jury could find that the VA did not reasonably accommodate her in good faith. There simply is no evidence that it had any knowledge that she needed such an accommodation.

Finally, Ms. Drake claims that the VA's efforts to supply her with ergonomic equipment fell short of fully accommodating her disability. Specifically, Ms. Drake alleges that the ergonomic equipment the VA provided as a reasonable accommodation was not installed for her when it arrived in mid-May 2014, that it was later disassembled by an unknown VA employee on Thursday, May 29, 2014, after Ms. Drake had set it up herself, and that she was thereafter told by Ms. Baker to refrain from setting up the equipment again because it "was not going to work." Drake Dep. at 105-06.

However, Ms. Drake's claims are refuted by an email dated and sent on the same day Ms. Drake alleges the ergonomic equipment was disassembled in which Human Resources Specialist Walter Brandt instructed VA employees Tonya Baker and Mary Rearick to "ensure that no changes are made to the ergonomic setup in office C-2064

13

until further notice." Dkt. 36-7. In that same email chain, Ms. Baker and Ms. Rearick's supervisor also addressed the issue, stating "[d]o not change any equipment etc in C-2064 until further notice." *Id.* Thus, assuming that a VA employee had disconnected Ms. Drake's ergonomic equipment on May 29, 2014, the undisputed evidence shows that the VA supervisors immediately addressed the issue by instructing that the equipment not be disturbed. Ms. Drake has adduced no evidence to establish that her problems with VA employees disassembling her ergonomic accessories persisted following this email exchange, or, if they did, that she ever reported the situation to the VA. *See Cloe v. City of Indianapolis*, 712 F.3d 1171, 1179 (7th Cir. 2013), *overruled on other grounds*, *Ortiz*, 834 F.3d 760 (affirming grant of summary judgment where "once the [employer] found out that its proposed accommodations were insufficient, it acted with reasonable speed to come up with new ones").

The evidence further establishes that Ms. Drake's ergonomic equipment was installed by the VA on June 2, 2014. Dkt. 31-6 at 4; Dkt. 31-9. There is no evidence that Ms. Drake ever complained to the VA after that time regarding her ergonomic equipment. Rather, it was Terri Morgan, the VA's Reasonable Accommodation Coordinator, who reached out to Ms. Drake three months later in October 2014 to check with Ms. Drake regarding her ergonomic equipment request. In response to Ms. Morgan's inquiry, Ms. Drake stated that she had moved her ergonomic accessories to her new workspace but that she had "kinda lost track" of some of the suggestions. Dkt. 31-8. She also informed Ms. Morgan that she would try to locate and forward the email that included all of the ergonomic equipment that had been suggested for her. Thereafter, Ms.

Drake found and forwarded the email to Ms. Morgan, but stated that "some of these things won't be needed …." Dkt. 31-9.

Ms. Drake now alleges in this litigation that because she moved positions so many times, she lost track of her ergonomic accessories and that she has not seen them for approximately two years. However, there is no evidence that, following the June 2014 set up of the equipment, she ever complained to the VA or notified anyone that the accessories were missing and that she needed them back, even when the VA reached out to her to inquire as to the status of her ergonomic needs. As the VA makes clear, if Ms. Drake was dissatisfied with her accommodations, it was her duty to notify the VA of that fact in order to avoid a breakdown in the interactive process. *See Beck v. Univ. of Wisc. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996) ("[C]ourts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary. … A party that fails to communicate, by way of initiation or response, may … be acting in bad faith.").

For these reasons, Ms. Drake's failure to accommodate claim does not survive summary judgment.

  **C. Hostile Work Environment Claim**

Finally, Ms. Drake argues that the VA subjected her to a hostile work environment because of her disability.[8] Specifically, Ms. Drake maintains that, upon her return to work at the VA, she endured a number of "heated discussion[s]" with Terri Morgan, who was Ms. Drake's point of contact for payroll issues, and that Ms. Morgan required her "to fill out an inordinate amount of paperwork to receive her paychecks." Pl.'s Resp. at 11. Ms. Drake further alleges that she had an upsetting discussion with Walter Brandt, a Human Resources Specialist, who told her that "if [she] can critically think then [she is] not disabled." Drake Decl. ¶ 13. Ms. Drake also points to the incidents described above, including the removal and dismantling of her ergonomic accessories, multiple job reassignments, and being required to work in undesirable locations, as all contributing to the hostile work environment she experienced.[9]

To prove a hostile work environment claim, a plaintiff must show that: "(1) her work environment was both objectively and subjectively offensive; (2) the harassment complained of was based on her [disability]; (3) the conduct was either severe or pervasive; and (4) there is a basis for employer liability." *Porter v. City of Chi.*, 700 F.3d 944, 955 (7th Cir. 2012) (internal quotation marks and citation omitted). To be

---

[8] Although the Seventh Circuit has not yet recognized a cause of action under the ADA for a hostile work environment, *see Lloyd v. Swifty Transportation, Inc.*, 552 F.3d 594, 603 (7th Cir. 2009), we will assume such a cause of action exists for the purpose of our analysis here.
[9] Ms. Drake also references the VA's alleged indifference to the racial slur that was scratched into her vehicle in support of her claim that she was subjected to a hostile work environment because of her disability in violation of the ADA. However, there is no indication that her protected characteristic, to wit, her disability, was the cause of such harassment, which is an essential element of such a claim. As noted above, Ms. Drake has abandoned her Title VII hostile work environment claim based on race by failing to address it in her response brief, and thus, we need not address this allegation further.

actionable, a plaintiff must show, based on the totality of the circumstances, that the harassment "alter[ed] the conditions of employment and create[d] an abusive working environment." *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005) (internal quotation marks and citation omitted). Ms. Drake has failed to make such a showing here as the conduct she describes was neither severe nor pervasive enough to create a hostile working environment, and, in some instances, has either not been shown to have been connected to her disability or was adequately addressed by the VA such that there can be no basis for employer liability.

Even assuming that Mr. Brandt on one occasion told Ms. Drake that he did not believe she was disabled, such a statement, while perhaps offensive and hurtful, was not severe enough to create an abusive workplace for Ms. Drake. Nor does Ms. Drake contend that the conditions of her employment were altered as a result of the comment, given that it is undisputed that she has always remained classified as a "Grade 2, Step 5" employee and never suffered a diminution in pay. Moreover, Ms. Drake has submitted no evidence to suggest that she was repeatedly subjected to such comments in the workplace. It is well-established under Seventh Circuit case law that "[o]ne utterance alone does not create an objectively hostile work environment." *Smith v. Northeastern Ill. Univ.*, 388 F.3d 559, 567 (7th Cir. 2004).

In support of her hostile work environment claim, Ms. Drake also relies heavily on the allegedly contentious exchanges she had with Ms. Morgan regarding her pay. But there is no indication that any such encounters between Ms. Morgan and Ms. Drake were in any way related to her disability or that Ms. Drake was singled out from non-disabled

17

employees to complete additional paperwork before receiving her paychecks. Without such evidence, no reasonable jury could find that Ms. Morgan's conduct was based on Ms. Drake's disability as is required to support a hostile work environment claim.

As discussed above, contrary to Ms. Drake's claims, we find that when she brought her need for accommodations to the VA's attention, it provided reasonable accommodations for her and when the VA learned that her ergonomic equipment had been dismantled, it acted quickly to address the situation. Therefore, these actions cannot constitute harassment sufficient to support a hostile work environment claim. *See Silk v. City of Chi.*, 194 F.3d 788, 804 (7th Cir. 1999) ("To amount to hostile workplace environment, the harassment must be so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment.") (internal quotation marks and citation omitted). Ms. Drake's concerns about her multiple reassignments and at times having to work in inconvenient locations, like the hallway, computer room, and piano room, simply do not rise to the level of severe or pervasive harassment sufficient to support a hostile working environment claim. There is no evidence that the terms and conditions of her employment were affected or that these occurrences were so severe or occurred so frequently that they created an objectively "hellish" working environment. *See Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 645 (7th Cir. 2005) ("[T]he workplace that is actionable is one that is 'hellish.'") (quoting *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir. 1997)).

For these reasons, viewing the evidence as a whole, the harassment Ms. Drake claims she suffered because of her disability falls well short of what is required to establish a hostile work environment claim under the ADA.

### III. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is <u>GRANTED</u>. Final judgment shall be entered accordingly.

IT IS SO ORDERED.

Date: 1/26/2018

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Paul J. Cummings
HENN HAWORTH CUMMINGS
Paul.Cummings@HHCFirm.com

Rachana Nagin Fischer
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
rachana.fischer@usdoj.gov

David M. Henn
HENN LAW FIRM P.C.
david.henn@HHCFirm.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov